# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| SHARON HORR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:16-CV-226-TLS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The Plaintiff, Sharon Horr (pronounced "Harr"), seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income. The Plaintiff claims that she would be unable to maintain substantial gainful employment due to limitations brought about by various physical impairments.

## PROCEDURAL HISTORY

The Plaintiff applied for Social Security Disability Insurance and Supplemental Income benefits in June 2011, alleging she became disabled on May 20, 2008. The Plaintiff's application was denied initially and upon reconsideration. In August 2012, an administrative law judge (ALJ) held a hearing on the Plaintiff's application, finding that the Plaintiff was not entitled to benefits. The Appeals Council denied review on October 22, 2013, making the ALJ's decision the final decision of the Commissioner. The Plaintiff then filed this action for administrative review before the Court. On March 12, 2015, Judge Philip P. Simon entered an Opinion and Order (R. 717, ECF No. 4) remanding this matter to the Commissioner for further consideration,

because the administrative law judge did not consider the opinion of the Plaintiff's treating physician, Dr. Daniel Roth. On February 1, 2016, a second ALJ presided over a new hearing, in which the Plaintiff and a vocational expert testified. (R. 635–71.) The new ALJ issued a decision on February 23, 2016, finding that the Plaintiff did not meet the regulatory definition of disability and was not entitled to disability benefits. (R. 566.) The Plaintiff now seeks review of this second decision under 42 U.S.C. § 405(g) and § 1383(c)(3).

## THE ALJ's HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the Plaintiff has not engaged in SGA since the alleged onset of disability, on May 20, 2008, through September 30, 2011, the date she was last insured. (R. at 548.) In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities under § 404.1520(c). Here, the ALJ determined that the Plaintiff had been diagnosed with and treated for cervical and lumbar degenerative disc disease, status post cervical and lumbar surgical fusion, chronic pain syndrome, fibromyalgia, headaches and migraines, obesity, post-traumatic stress disorder,

depression, hernia repair with mesh, and left hammertoe surgery. (R. at 549.) Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, she earns a presumption of disability "without considering [her] age, education, and work experience." § 404.1520(d). But, if the impairments, either singly or in combination, fall short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

Here, the ALJ determined that the Plaintiff's impairments do not meet or equal any of the listings in Appendix 1 and that she has the RFC to perform light work, as defined by § 404.1567(b). The ALJ determined that the Plaintiff had the physical residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a), except that she could stand and walk, in combination, for two hours and sit for six hours during an eight-hour workday; she could lift, carry, push and pull up to ten pounds; and she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but she could never climb ladders, ropes, or scaffolds. The ALJ also determined that the Plaintiff retained the mental RFC to understand, remember, and carry out simple, routine, repetitive tasks, to make simple, work related decisions, she could tolerate few, if any, changes in the workplace, and could not perform fast production work.

In reaching her decision, the ALJ went through an analysis of Dr. Roth's opinion in the record. In the prior appeal, Judge Simon remanded the case back to the ALJ because Dr. Roth's opinion was not given any consideration. (R. 722.) First, the ALJ found Dr. Roth's opinion was not entitled to controlling weight because the documents were treatment notes and not medical opinions. (R. 557.) In reaching this decision, the ALJ observed that Dr. Roth's treatment notes were well supported by clinical and laboratory diagnostic techniques, but that Dr. Roth did not order any diagnostic testing of the Plaintiff's neck or back, and proceeded with treatment without them. (*Id.*) The ALJ noted that orthopedic surgeon Dr. McGee ordered diagnostic testing of the Plaintiff's neck and mid-back in January 2012 and that the imaging demonstrated no significant neck or back abnormalities and there was no evidence of disc herniation or significant stenosis. (*Id.*)

The ALJ also noted the imaging ordered by orthopedic surgeon Dr. Shugart from August 2014, demonstrated a mild and stable ridge bulge complex at the L1-2 level. (*Id.* at 557–58.) The ALJ noted that the L2-3 disc was unremarkable other than for left facet arthropathy. (*Id.*) The L3-4 disc was also unremarkable with no significant disc bulge at the L4-5 level. The ALJ noted that the ridge bulge complex at the L5-S1 level appeared improved, and there was no central stenosis. (*Id.*) The ALJ noted that Dr. Shugart advised the Plaintiff that the study indicated that she did not need surgery. The ALJ suspected that the Plaintiff's pain was inflammatory, prescribed Voltaren, and recommended continued physical therapy. (*Id.* at 558.) The ALJ noted that subsequent diagnostic testing in August 2015 is relevant to the Plaintiff's complaint of back pain as well as her complaint of debilitating headaches. (*Id.*) The tests of the thoracic spine showed only mild degenerative disc disease with normal vertebrae heights. The ALJ noted that a CT scan of the head was negative for acute intracranial abnormality. (*Id.*)

The ALJ also noted that Dr. Roth's treatment notes were generally consistent with the substantial evidence on the record. (*Id.*) The ALJ observed that Dr. Campbell's exam showed trigger points, knee crepitation, negative straight leg raise, and normal ranges of motion of the shoulders, wrists, hips, ankles, and feet. The exam by physical medicine specialist Dr. Lazoff noted tender points, limited range of motion of the back, normal strength, intact gait and upper/lower muscle strength. (*Id.*) The ALJ observed that the exams by orthopedic surgeons Dr. McGee and Dr. Hoffman showed normal range of motion of the neck, no tenderness to palpation of the neck/para-scapular region, and normal strength. (*Id.*) The ALJ also noted that the exam by Dr. Posner noted significantly reduced range of motion of the neck. (*Id.*)

Through her analysis, the ALJ summarized that Dr. Roth's findings upon physical examination were generally consistent with those of the other treating and examining sources "other than findings that were particularly unique to him." (*Id.*) The ALJ noted as an example that Dr. Roth noted cervical and lumbar facet loading. (*Id.*) The ALJ observed that regardless of the particularly unique findings, all of the physical examinations noted normal and abnormal findings that were within range of another. (*Id.*) The ALJ noted that though Dr. Posner noted severely limited neck range of motion, none of the other physicians did and that the degree of limitation is unsupported by the results of the diagnostic tests. (*Id.*)

The ALJ considered other factors in determining whether Dr. Roth's treatment notes were entitled to great weight, noting that except for Dr. Shugart, the other physicians had brief or no treatment relationships with the Plaintiff and examined her no more than once or twice. The

ALJ noted that the doctors who examined and treated the Plaintiff were familiar with the other information in the case and were specialists.[1]

In evaluating all of the factors considered in determining whether a medical opinion is entitled to controlling, great, significant, little or no weight, the ALJ concluded that Dr. Roth's opinion is entitled to no weight as a medical opinion because the ALJ concluded that it is not a medical opinion. The ALJ concluded that Dr. Roth's opinion is a treatment note, made contemporaneously with the relevant period under consideration. The ALJ again noted that Dr. Roth's clinical findings and observations are generally consistent with the observations of the Plaintiff's other treating healthcare providers. (*Id.* at 559.) Ultimately, the ALJ gave Dr. Roth's observations and clinical findings significant weight, just like the observations made at the consultative examination. (*Id.*)

The ALJ gave greater weight to the records of Dr. McGee and Dr. Hoffman who, in addition to their examinations and treatment recommendations, ordered and reviewed diagnostic studies of the Plaintiff's cervical and thoracic spines. (*Id.*) Finally, the ALJ gave Dr. Shugart's records greatest weight because of the "longitudinal treatment relationship with" the Plaintiff as a surgeon beginning before January 2007 and continuing through August 2014. (*Id.*)

The ALJ noted that Dr. Shugart saw the Plaintiff in January 2007 for post L5-S1 fusion follow-up, noting that the Plaintiff was doing well (*Id.*) The ALJ noted that the Plaintiff's surgical instrumentation looked good on x-ray and that Dr. Shugart released the Plaintiff to regular activities. (*Id.*) The ALJ noted that the Plaintiff returned in June 2011, complaining of constant sharp and deep neck and bilateral shoulder pain. (*Id.*) The ALJ noted that in response to

---

[1] The ALJ went on to note that Dr. Campbell specialized in rheumatology, Dr. Lazoff in physical medicine, Dr. Roth and Dr. Posner in pain management, and Dr. Shugart, Dr. McGee, and Dr. Hoffman in orthopedic surgery. (R. 558.)

6

the Plaintiff's complaints, Dr. Shugart ordered an MRI evaluation and, based on its results, Dr. Shugart operated on her neck in July 2011 (*Id.*) The ALJ noted that post-surgical x-rays taken in September 2012 again showed that the plate and graft were in good position and that Dr. Shugart ordered physical therapy for shoulder tightness. (*Id.*)

The ALJ noted that when the Plaintiff returned in May 2012 and complained of increased neck, and right arm pain, Dr. Shugart ordered a CT scan, and after reviewing it, assessed that the Plaintiff did not have pseudo-arthrosis and her issues were probably inflammatory. (*Id.*) The ALJ noted that at follow-up in September 2012, the Plaintiff still had myofascial pain likely due to fibromyalgia, but overall was doing fairly well and her x-rays showed her instrumentation was in good position. (*Id.*)

The ALJ further noted that Dr. McGee ordered diagnostic testing of the Plaintiff's cervical and thoracic spines, which failed to show disc herniation or significant stenosis at any level. (*Id.*) The ALJ noted that in response to the Plaintiff's complaints of back and bilateral leg pain in August 2014, Dr. Shugart ordered an MRI study of the Plaintiff's back, which did not show any disabling condition. (*Id.*)

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

7

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

### I. The ALJ's Evaluation of Medical Opinions

The Plaintiff argues that the ALJ improperly determined that the Plaintiff can perform light work because the ALJ declined to give adequate weight to that of two of his treating physicians: Dr. Roth and Dr. Shugart. "The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (first citing 20 C.F.R. §§ 404.1527(c)–(d); then citing *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994); and then citing *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)). "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Id.* (first citing 20 C.F.R. § 404.1527(c); then citing *Luna v. Shalala*, 22 F.3d 687, 690 (7th Cir. 1994)). A court on review must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)).

### A. *Dr. Roth's Opinion*

As a result of the Plaintiff's first appeal, Judge Simon remanded the matter to the Commissioner because the ALJ erred by "ignoring [Dr. Roth's] opinion without any explanation." (R. 722.) Judge Simon explained that "the ALJ simply didn't address [Dr.] Roth's opinion at all, much less determine how much weight to afford it." (*Id.* at 723)

The Plaintiff argues that the ALJ's reasons for not giving weight to Dr. Roth's opinion "fails to make sense in context." (Pl.'s Br. 12, ECF No. 12.) The Plaintiff argues that the ALJ "wants to set Roth's November 2011 and January 2012 opinions aside for being formed as little

9

as 40-some days after the Date Last Insured." (*Id.*) The Plaintiff also takes issue with how the ALJ weighted and "prioritized" Dr. Roth's opinion.

In turn, the Defendant argues that the ALJ complied with Judge Simon's prior remand instructions. The Defendant argues that Judge Simon did not require the ALJ to give Dr. Roth's opinions any particular weight; instead, Judge Simon instructed the ALJ to consider Dr. Roth's opinions and explain what weight she accorded them. The Defendant points specifically to Judge Simon's comment, "Maybe Dr. Roth's impressions will do nothing to change the final outcome here, but the ALJ must at least explain why that's the case." (*Id.* at 722.)

Whatever mischaracterization the Plaintiff argues the ALJ made on remand, the Plaintiff's argument misses the thrust of the ALJ's weight determination. Back on remand, the ALJ acknowledged that the Court and the Appeals Council had directed her to "evaluate[] Dr. Daniel Roth's opinion and if not given controlling weight, explain the reasons for not doing so." (*Id.* at 546.) The ALJ then summarized Dr. Roth's November 9, 2011, treatment note. The ALJ noted that Dr. Roth's impressions and diagnoses consisted of failed neck and lower back surgery, chronic headaches, pain syndrome, cervical and lumbar radiculopathy, bilateral cervical/lumbar facet arthropathy, sacroiliitis, and fibromyalgia. (*Id.* at 526, 553, 555.) The ALJ also noted that Dr. Roth prescribed pain medications, injections, and a sleep aid. (*Id.* at 526, 555.) The ALJ acknowledged that at a subsequent visit on January 4, 2012, the Plaintiff reported that the injections resulted in an 80% improvement in her pain and that Dr. Roth prescribed Percocet and increased her sleep medication to help with other pain. (*Id.* at 521–23, 555.)

The ALJ, over three pages in her decision, explained why she gave Dr. Roth's observations and clinical findings "significant weight" but his medical opinion "no weight." (*Id.* 557–59.) The ALJ noted that Dr. Roth made certain medical observations during the course

10

of his examinations, such as tenderness in the Plaintiff's neck, shoulders and back, reduced range of motion, positive Hoffman's sign on the right of the neck, intact sensation, and intact gait and muscle strength (*Id.* at 521–22, 525–26, 555.) The ALJ acknowledged that these observations were relevant medical evidence. Applying the factors set forth in 20 C.F.R. 404.1527(c), the ALJ gave these observations "great weight." The ALJ reasoned that, although Dr. Roth only examined the Plaintiff twice and did not establish a long-term treatment relationship with her, his observations were consistent with those made by the Plaintiff's other healthcare providers. (R. 557–59.)

But the ALJ also explained that Dr. Roth's observations did not include opinions on the Plaintiff's functional abilities like sitting, standing, walking, lifting, pushing, pulling, as well as environmental or postural limitations. (R. 559.) "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment[s], including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment[s], and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Because Dr. Roth's treatment records did not include those opinions, the ALJ determined that Dr. Roth's opinion did not qualify as a medical opinion under the regulations. *See Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996) ("Given that [the physician] failed to venture an opinion as to the extent of [the claimant's] limitations or as to his residual functional capabilities, the evidentiary usefulness of his findings is slight, at best.").

Accordingly, the ALJ properly evaluated Dr. Roth's treatment notes and observations in accordance with the Court's prior Opinion and Order and the regulations.

11

**B.**   *Dr. Shugart's Opinion*

Although the ALJ properly analyzed the record with respect to Dr. Roth, the Court must also look at the remainder of the ALJ's opinion. The Defendant argues that the ALJ complied with the Court's remand instructions. But Judge Simon's Opinion and Order did not solely focus on whether Dr. Roth's opinion was given proper analysis. His instructions went further: "Because this issue [was] enough for remand, there [was] no need to discuss the other issues raised by [the Plaintiff] at [that] time. The ALJ should address [the Plaintiff's] other arguments as appropriate." (R. 723.) The ALJ's compliance with respect to Dr. Roth's opinion does not preclude the possibility that the ALJ improperly adjudged the remainder of the record.

The Plaintiff argues that the ALJ did not sufficiently account for Dr. Shugart's opinions. On July 29, 2011, Dr. Shugart performed surgery on the Plaintiff, placing a pin through her C6 and C5 neck vertebra, implanting a graft of a bone into her vertebra, preparing endplates for insertion into her vertebral space, removing bony outgrowths from remaining original bone, and placing an artificial front plate with screws drilled into vertebras C4, C5, and C6. At a post-surgical follow-up in September 2011, the Plaintiff reported she was feeling better but was still "tight" through her shoulders. (*Id.* at 555.) X-rays showed her plate and graft were in good position. (*Id.*) Dr. Shugart noted that the Plaintiff was doing well, and advised her to start physical therapy twice a week and return to in eight weeks for a final x-ray. (*Id.*) The Plaintiff did not return to see Dr. Shugart until May 2012, and instead went to see Dr. Roth in November 2011, six weeks after her date last insured ended. (*Id.*)

The Plaintiff argues that the ALJ mischaracterized the scope and impact of this surgery, and instead, focused on minor details of the Plaintiff's recovery that, as a result, improperly characterized the Plaintiff's full record. (Pl.'s Br. 13.) The Plaintiff argues that her full record

12

indicates that surgical intervention was "worthwhile," as well as the length of time it takes for someone like the Plaintiff to recover back to "working health." (*Id.*)

An ALJ "may not selectively discuss portions of a physician's report that support a finding of non-disability while ignoring other portions that suggest a disability." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2009). But Dr. Shugart never suggested any functional restrictions greater than those that the ALJ imposed. The Plaintiff does not identify those functional restrictions, but instead, notes that the ALJ relied on "minor details" in Dr. Shugart's treatment notes to suggest that the Plaintiff functions at a higher level than she actually does.

The Court finds that the ALJ sufficiently reviewed the record and set forth that review in her opinion. For instance, the ALJ acknowledged that the Plaintiff returned to see Dr. Shugart in May 2012, and reported increased neck and right arm pain. (R. 559.) The ALJ also acknowledged that Dr. Shugart noted that, at this visit, the Plaintiff still reported "a lot of myofascial pain." (*Id.*) Even if the ALJ failed to include other treatment observations that Dr. Shugart reported, that is not fatal. The Seventh Circuit has established that an "ALJ is not required to discuss every piece of evidence but is instead required to build a logical bridge from the evidence to her conclusion." *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). Furthermore, the ALJ gave "greatest weight" to Dr. Shugart's records (R. 559.) The Plaintiff's argument improperly assumes that an ALJ must adopt all aspects of a medical opinion to which she accords great weight. The Seventh Circuit has explained that in determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

Accordingly, the ALJ properly analyzed the record with respect to Dr. Shugart's expert medical opinion.

## II. Proper Combination of Impairments in RFC

The Plaintiff argues that the ALJ erred by failing to incorporate into her RFC the impairments in the combination that the Plaintiff faces, both as to those that predominated during the period between the alleged onset date and the date last insured, and as to those directed on the "first go-round to be given real consideration." (Pl.'s Br. 19.) But substantial evidence supports the ALJ's finding that the Plaintiff could perform a reduced range of sedentary work that the vocational expert identified. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like files, ledgers, and small tools, and only standing or walking for two hours each workday. 20 C.F.R. § 416.967(a); Social Security Ruling 83-10.

Here the Plaintiff was 40 years old as of her date last insured (*Id.* at 565.) The restrictions on sedentary work alone account for the limiting effects of the Plaintiff's weakness and pain, surgeries, hernia repair, fibromyalgia, and obesity. The ALJ limited the Plaintiff to standing and walking for only two hours in an eight hour work day. (*Id.* at 552.) The ALJ prevented the Plaintiff from climbing ladders, ropes, and scaffolds, and limited her to only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. (*Id.*) The ALJ accounted for the limitations resulting from the Plaintiff's migraines and mental impairments by

restricting the Plaintiff to simple, routine, repetitive tasks and to work that entailed few changes in the workplace and no fast production work. (*Id.*)

The ALJ noted that no medical professional stated that the Plaintiff had greater functional limitations than the ALJ found:

> The only actual opinion that addresses the claimant's functional limitations is that of a medical consultant for the State agency, Dr. Jerry Smartt. He opined that the claimant was capable of light work activities that included, but were not limited to sitting or standing/walking for six hours during an eight-hour workday; lifting, carrying, pushing and pulling up to twenty pounds occasionally; and engaging in occasional postural changes.

(*Id.* at 559–60.) Dr. Smartt reviewed the Plaintiff's records one month before the Plaintiff's date last insured. (*Id.* at 416–23.) In determining the Plaintiff's abilities, Dr. Smartt noted the Plaintiff's history of cervical disc disease, surgeries, fibromyalgia, neck and shoulder pain, and headaches. (*Id.* at 417.) The ALJ also reviewed the medical findings of the Plaintiff's treating and examining physicians. None of those physicians offered an opinion on the Plaintiff's functional limitations and noted that routine examinations findings were largely consistent with the restriction of a reduced range of sedentary work. (*Id.* at 554–64.)

The ALJ noted that reviewing psychologist Joelle J. Larsen, Ph.D., acknowledged the Plaintiff's affective and somatoform disorders, but determined that she had only mild restrictions in activities of daily living; mild difficulties maintaining social functioning; and mild difficulties maintaining concentration, persistence, or pace; and experienced no episodes of decompensation of extended duration. (*Id.* at 375, 385, 551–52.) The ALJ correctly noted that another reviewing psychologist, William A. Shipley, Ph.D., affirmed Dr. Larsen's findings. (*Id.* at 424, 551–52.) Nonetheless, the ALJ acknowledged that the prior administrative law judge found the Plaintiff to be moderately limited in her abilities to perform mental tasks. Thus, despite the reviewing

15

psychologists' findings, the ALJ restricted the Plaintiff to simple, routine, repetitive tasks. This work does not involve more than a few if any workplace changes and no more than simple work-related decisions, and no fast paced production work (R. 564.)

Accordingly, substantial evidence supports the ALJ's RFC Finding.

### III. Remaining Arguments

The Plaintiff raises a variety of other issues throughout her briefing that the Court now addresses in turn. First, the Plaintiff suggests that the ALJ failed to account for the Plaintiff's stress for having "survived traumatic abuse during her formative years." (Pl.'s Br. 11.) The single progress note from Dr. Rutten that the Plaintiff cites in support of this argument does not say what the Plaintiff suggests. Dr. Rutten's note from May 18, 2012, was written almost eight months after the expiration of the Plaintiff's date last insured status. (R. 498.) The note indicates that the Plaintiff reported "mood 'depressed' still crying stress & physical pain for fibromyalgia & neck pain makes it worse. Memories from childhood also impact mood, bad dreams & nightmares." (*Id.*) However, the Plaintiff cites no mental-health professional's opinion that the Plaintiff's past abuse prevented her from performing the limited work-related tasks that the ALJ identified.

Second, the Plaintiff claims that the ALJ did not sufficiently account for her obesity. (Pl.'s Br. 14–15.) But the Plaintiff cites no evidence to show that obesity diminished her capabilities beyond what the ALJ found. All the Plaintiff notes is that her cardiologist determined that while her heart was "ok," she lacked "conditioning." (*Id.*) The Plaintiff does not elaborate any further. She does not explain what the cardiologist meant by "conditioning" or specifies any restrictions the doctor recommended in light of her lack of conditioning. The Plaintiff argues that obesity triggers shortness of breath. (*Id.*) But the Plaintiff cites no medical

16

source for this assertion or explain why this would prevent the Plaintiff from performing a limited range of sedentary work. Her claim that her obesity results in additional, unaccounted limitations rest on improper speculation. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006) (speculation that obesity exacerbated impairments is insufficient); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (same); *Rutherford v. Barnhart*, 399 F.3d 546,553 (3d Cir. 2005) (generalized claim that obesity exacerbates impairments is insufficient without medical evidence specifying how or in what way it does so).

But contrary to the Plaintiff's argument, the ALJ adequately considered the Plaintiff's obesity. The ALJ determined that obesity was a severe impairment and specifically accounted for it when discussing her step three findings. (R. 549, 550). When crediting Dr. Smartt's opinion of the Plaintiff's functional capacity, the ALJ made an explicit note that Dr. Smartt considered the Plaintiff's obesity. (*Id.* at 560.) Dr. Smartt recorded the Plaintiff's height, weight, and body mass index on the same form on which he expressed his opinion that the Plaintiff could perform a range of, not sedentary, but light work. (*Id.* at 417.) *See Prochaska*, 454 F.3d at 736–67; *Skarbek*, 390 F.3d at 504 (ALJ's failure to mention obesity not reversible error because the ALJ relied on the opinions of doctors who were aware of the claimant's obesity). The Plaintiff does not cite medical evidence or medical opinions contradicting Dr. Smartt's opinion, which the ALJ reasonably credited.

Accordingly, upon review of the record, the Court does not find a basis in the Plaintiff's remaining arguments to remand the ALJ's opinion.

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the Commissioner's decision.

SO ORDERED on September 6, 2017

                                                s/ Theresa L. Springmann
                                                CHIEF JUDGE THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT